May it please the Court, I'm Karen Ford, and I'm here representing the appellant, Jacqueline Zhang, and I'd like to reserve two minutes at the end, just in case I have something to say in reply. I was a little surprised when I saw the description of our case. I don't know who writes those, but in the listing for today, we describe this as purely a discrimination case, because it isn't solely a discrimination case. The cornerstone claim here, in fact, was as a public employee who was deprived of her due process rights and of her property interests in her job. And there's certainly the other claims as well, and discrimination is certainly one of them. Now, the cornerstone of the summary judgment that was granted below was really a finding of fact by the Court that, number one, Ms. Zhang's employment began on October 5th of 2015, and not earlier, as Ms. Zhang contends. Second of all, there's this assumption, it's not exactly stated as a finding of fact, but it's sort of written in the opinion, that if she had not started until October 5th, that she was a probationary employee and that she had no procedural rights whatsoever, no rights to claim due process of any kind. And both of those things are certainly disputed, and I think the second one is just downright inaccurate, because probationary employees do have rights under the county's policies and procedures. And I think that we presented that quite well to the Court below. And if I can start with the first of those, whether her start date was Monday, October 5th, when she actually showed up and started working, or the start of the pay period on the third, why is that a factual question? I mean, it seems like one could characterize it as sort of, for purposes of California public employee law, when does the one-year period begin? Is it the actual date of performing work, or is it the start of the pay period? So why should we be thinking of it as a factual question? Well, actually, I think if you want to look at it, it's just the clear cut. Look at the paperwork. Look at the paperwork. It starts on October 3rd. That's when she went on the payroll records as an employee. She was paid as a salaried employee starting on October 3rd. And we have the declarations of the person who's in charge of payroll for the county supporting that proposition, saying, yes, when employees go on the payroll, that's when they become an employee. That's Ms. Gerard. We have the auditor controller for the county, Mr. Miller, with a declaration saying, yes, when they go on the payroll, which was October 3, not October 5. As a practical matter, baked into your question is part of the problem here. She didn't, you know, the day that she first showed up at a particular office was not the date she started work. She was a management employee, and she was going to be in charge of financial records and monitoring the activities that were going on by vendors and employees at the parks. And she began actually on October 1 by going to a meeting of county commissioners that she was asked by her supervisor to go to, and she went to it on October 1. On October 2nd, 3rd, and 4th, she was reviewing and learning about the finances of the county going over records and so on, which she would have to do at some point to, you know, get into her job. She actually went out... Now you're basically arguing that it's a factual question. I think Judge Miller was saying, is it a matter of law, or is it a matter of law? In other words, is there any California statute, regulations, or case law that says probationary period starts at the first of the payroll or when you show up for work? No. Probationary periods can be all different lengths, and as a matter of fact, there are different lengths for different employees at the County of Monterey, and though the start date isn't in any statutory or regulatory provision. But if you were to look at something, like I said, that's the county's records, it would be the payroll record, which shows her starting as a salaried employee on the 3rd of October, meaning she had been there more than one year on the 5th of October of 2016 when they fired her. And is the probationary period, is that defined, that's defined by a, is there a county ordinance that sets that out, or a regulation? There's not a regulation exactly. I think in the policies it speaks of 12-month and 9-month probationary periods, but it's my understanding that those, you know, can be flexible and the different employees have different probationary periods. Her offer letter said that she had a one-year probationary period, but the offer letter doesn't say what date that starts. So, no, there is no statutory provision, no regulatory provision that sets out that every employee has specifically. Actually, the offer letter said that there would be a start date of Monday, October 5th. It said tentative start date, and when she started talking with her manager, he wanted her to start earlier, and that is, was substantiated by her manager when we took his deposition and also by Ms. Zhang and also by Mr. Giboney, saying that she was actually asked to start work earlier than that. So, no, that's not an absolute either. And indeed, she went on the payroll on October 3. Now, if we put to one side the work that she did before getting onto the payroll, that is to say, the work before the 3rd, the letter says you have a tentative start date of the 5th. Now, of course, it says tentative, but then, in fact, she does start work in a meaningful understanding or maybe I'll say permissible construction of the word start. She, in fact, does start on exactly that date, so what was a tentative start date turns out to be the start date. So, the letter of her employment says your start date is the 5th. Now, that puts to one side the work that she did before the 3rd, but if we're only talking about when she's officially on the payroll, as distinct from her start date, her letter of employment says your start date is the 5th. How do you respond to that? Just what I just said. It says a tentative start date as it turned out. It says a tentative start date, but tentative would be only as to what the date is. It turns out that is the date, so that's the start date. The tentativeness is removed as soon as she actually shows up on that day. Respectfully, I disagree. Because her start date, you know, you say that she actually started for all practical purposes on the 5th. No, she actually started for all practical purposes on the 1st, and she did do work on the 3rd and the 4th, and given the nature of her job, it's not like she was a receptionist or something where she had to be sitting in a particular chair in order to be working. No, I understand that, but she didn't get a tentative start date is on the 3rd. The tentative start date was clearly indicated as to the tentative date on which you will actually begin showing up in the office regularly scheduled work. The tentative start date is Monday the 5th, and then it turns out it is Monday the 5th, so the tentative is removed. But start date in that letter certainly, as I read the letter, it says that for our purposes, we consider start the date you actually show up for work. Now, that's putting to one side your argument, which I'm not sure what the answer is, that she actually did begin work earlier, going to the meeting and reviewing the records. And she actually was paid starting on the 3rd. I understand that. She was a salaried employee, and she was being paid beginning on the 3rd. So as I sort of said in the beginning, at the very least, this is a disputed fact. The exact, you know, what do you consider, all the things that we're just talking about here are things that a jury would consider in her case when they're deciding whether she had actually worked a full year before the 5th of October when she was terminated. By the way, there's lots of other things that happened that are very inconsistent with her being considered a probationary employee as of October 2016. Thing number one, of course, is our whole argument that she was told by an appointing authority, who, by the way, none of the people who were involved in terminating her employment were appointing authorities for the County of Monterey. And that is a huge problem with the county's position, because it requires, their regulations do require that the only people that can terminate someone's employment is an appointing authority. And neither Ms. Ellerbee, who made the initial decision, nor Mr. Gerton, who was the guy who sort of reviewed it thereafter, neither of them were appointing authorities. As a matter of fact, Mr. Gerton, I believe, there was a big question about the propriety of his hiring, and he got terminated shortly thereafter because of that. But at any rate, neither of them were people in a position to do that. But her original supervisor and the person that she worked for from October 2015 through July was a fellow who was an appointing authority, and he told her that her probation was over with. Now, that's a disputed fact, but, you know, our evidence is that he told her in July, you are no longer a probationary employee, you've completed your probation. He gave her a performance review at that time that said you easily pass probation. They checked off the boxes there for year-end performance review. Had she still been considered by the county to be a probationary employee thereafter and to have a 12-month probationary period that continued past July, they were supposed to give her an 11-month performance review. That's what they would have had to do, had to tell her, you know, if there were any problems with her performance so that she could have a chance to fix them so she would successfully complete her probationary period. Undisputed, that never happened. Also, if she's a probationary employee, they're supposed to give her five days' advance written notice of her, of the intent to terminate her employment. Even if she's a probationary employee, she's entitled to that. She didn't get that. The first thing she knew was that even using the county's version of facts, version of events, on the 365th day after the official close of business, she's called into a room and given, oddly enough, a performance review and a termination notice. She had absolutely no idea from July forward that she was considered to be a probationary employee or might be in a probationary status. She felt that from July forward, it was her understanding that she was no longer a probationary employee. And her prior supervisor, he was retiring in July, which is explained why he did this just before he left. And when he, after he retired, she called him up after she'd been terminated and said, wait a minute, aren't I still a regular employee? And he said, yeah, you're a regular employee. You never went off probation. If you were wrong. Pardon? In other words, your argument seems to be that if you have a firm written policy about who and who is not a probationary employee, that anyone can change that policy. I think an appointing authority could give her an early release from her probationary period and make her a regular employee. But if the county of Monterey thought she was still a probationary employee, why no 11-month review? Why no 5-day advance notice? Because a governmental entity actors act in the contradiction of a policy doesn't necessarily mean the policy doesn't exist. What policy, Your Honor? I'm sorry. We're talking about the probationary policy. The probationary policy is 12 months, and she is treated as though she's a permanent employee. That doesn't change the policy. It doesn't matter a lot, does it? Not all employees are probationary for 12 months. And so, no, there's no automatic 12-month probationary period. It did say that in her letter. And she was told to the contrary, but like I said, if one was to assume that she was a probationary employee, then why didn't they do the things that they would have to do with a probationary employee? And they didn't do them. So, you know, that's partly our argument that she had a contractual right to assume that she had a reasonable expectation of continued employment and could only be terminated if they went through the proper disciplinary steps that they're supposed to do, in addition to which, it's just calls into question whether the county actually considered her to be a regular employee. I think this was a hurried, last-minute decision, and I think they knew darn well that she really wasn't a probationary employee anymore. You're down to about two minutes. Do you want to reserve? Pardon? You're down to about two minutes. Did you want to reserve time? Oh, I had already reserved two minutes. I thought, I figured my count was. No. No? Oh, okay. I'm sorry. I thought I had reserved two minutes. Okay. Thank you. We don't separately change the clock when you say, I've reserved time. You have to manage yourself. I'm sorry. I didn't mean to say that. No. Just by way of explanation. May it please the Court, Chris Panetta for Defendant County of Monterey. I think the main arguments in this case were outlined well in the briefing. I don't have much more to add beyond what is in the briefing. I'm happy to answer whatever questions you have, and I'd briefly like to make a few points. The first, with respect to Ms. Zhang's 1983 claim, she was an at-will probationary employee at the time she was released from her employment on October 4, 2016, and she therefore held no property interest in her position with the county, and she can't sustain a Section 1983 claim for due process. The main basis of the arguments that plaintiff puts forward is that the payroll period for October 5, 2015 started on October 3, and that therefore she actually started work on October 3. Well, that's one of the arguments. A payroll period and the time that a person starts work are two different things. It's apples and oranges. Do you agree with the position of the plaintiff that whether the one-year clock starts running at the beginning of the pay period or on the first day of actual physical presence, that that's a factual question, or do you think that's an issue of law? I think it's an issue of law. I mean, the letter... And what is the legal rule that we would look to to answer that question? Well, I mean, I think what has to be analyzed is when does the county state this 12-month period is going to begin? And in the letter, it says you're going to start work on October 5. That's when the county understood that she would begin working and that that was when her 12-month period would start. If an individual, by working, looking on the Internet or visiting parks or visiting a public presentation of the parks district, can rejigger the start date of a probationary time for a county, then the employer would have absolutely no control over the probationary period. And I just... Well, that parade of horribles is not in front of us. We got a two-day... I'm sorry. That parade of horribles is not in front of us. We have a difference of two days. We have a difference of two days. Two days between the third and the fifth. Correct. We're not talking about unlimited rearrangement of start dates. Well, we are. We are. The county believed that the last day that they could terminate her was October 4, 2016, based on the letter that said her start date was October 5, 2016. Tentatively. I think that's your problem. If it said your start date is X, you've got a pretty good case. If it's tentatively... And she's paid for the two prior days. She's not... A payroll period... We're just trying to sort out whether this is a question of law or a question of fact. Their argument is, look, it's an issue of fact because of the payroll period. It's an issue of fact because she actually did some work before then. And I agree that you disagree with those, that they're relevant. I don't see anything in California law that says the start date is the first day you show up for work or the payroll date. I just don't see any guidance on that. Do you have any? Well, what the county rules say is that you're on a 12-month time period. And the 12-month time period starts the first day of work. And what it says is that temporary or part-time or any work prior to that start date doesn't count as an initiation of that 12-month period. Where is the county rule that says that? We cited in our brief, and I don't have it at the tip of my tongue right now, but I can provide that to you. I guess the point is, is that it's very important for a county or a public entity to understand how long a probationary period is going to last because they need to know when they can terminate an employee. During the probationary period, you are an at-will employee. You can be terminated for any reason. So that knowledge is extremely important. And so if the county puts in a letter — To both parties. I'm sorry? To both parties. To both parties. Yes. To both parties. Yes. To both parties. That's correct. Absolutely. To both parties. It's important. So if you've got a county and if you've got a management that looks at an offer letter and sees October 5th as the start date, and then not until the person's been terminated does she claim that she, in fact, worked prior to October 5th — Well, she's fired, and that — excuse me — the firing apparently just comes out of the blue. So, of course, she would say it afterwards because until she's — after she's fired is not relevant. So the fact that she doesn't make the argument until later is neither here nor there for me. Well, I — she's told in a letter, if I'm — if I start work and I'm given a letter and that letter says, hey, your start date is October 5th, 2015, and you're on a 12-month probationary period, I'm put on notice that I have a 12-month period and that the last day of my 12-month probationary period is October 4th, 2016. The letter actually says there is a probationary period of 12 months starting from time of appointment. So it doesn't even use the phrase start date. So that — I mean, it does kind of invite the possibility that maybe for purposes of computing the 12 months, the time of appointment is something else. I think — I think — I think time of appointment has to be the time that they start work. It cannot be the time when they voluntarily choose to visit a park a couple days prior to October 5th. But can it be the date on which the payroll considers her to be eligible for money? A payroll period is a period of time that employers use to measure how long and how much money an employee is to be paid during that period of time. It does not designate the start date. But your argument seems to be that she's being paid prior to the date of her appointment. She's not paid prior to the date of her appointment. Well, but the letter says it runs 12 months from the time of the appointment, right? That's correct. Yeah. And you're trying to say that her start date is two days after that. No. I'm saying that her start date is October 5th, 2015, which is what the letter says. What plaintiff is claiming is that because — And what's the date of her appointment? The appointment has to be her start date. There's no other date that's listed. Well, but wait a minute. If her start date and her appointment date are both on the 5th, she's being paid for two days before her appointment starts, because she's being paid starting on the 3rd. She wasn't being paid starting on the 3rd. Just because I start — Well, wait a minute. The payroll period starts on the 3rd. That is a payroll period that exists for all employees. And is she paid during that first payroll period — I don't know whether she was paid biweekly or monthly — was she paid a full two-week period or paid a full month period? She was an exempt, salaried employee, so — which means that she's paid for the week, the five days that she worked. But I think that — I mean, so is the pay period, is it a weekly period or a biweekly? I believe it's biweekly. So the — but the point is, for the first pay period that she worked, she got a regular check, not 12 fourteenths of a check. Is that right? I would probably say, yes, that's true. I haven't looked specifically at the pay, sir. But what I would say is that when you've got an exempt employee, they generally work five days a week. This individual started on October 5th, Monday. She worked five days that first week, as she would every week. The fact she didn't, you know — so I don't think you can say, let's look at this payroll date, which is a payroll date that applies to every single employee in the county. It's what's used by the county to process their payroll. You can't say that one date means that the October 5th date magically becomes October 3rd. It's two different things. If I say to an employee, you are starting work on October 5th, and because my payroll period happens to start two days for all the other employees, so that when I pay that person, it indicates the same thing, that her payroll period started before that. It does not mean that she started two days before. She started on the day that she was told to start, which was October 5th. The problem is, I mean, this is all a creation of the county policy, right? The county could make the time of appointment be whatever they want it to be for purposes of computing the 12 months. Correct. And you haven't pointed us to any county official statement defining how this is to be computed, and the plaintiff gives us these declarations from the people in the auditor's office that says that — they both say that it runs from the start of the pay period. So what basis do we have for saying, as a matter of law, that those declarations should be rejected? As a matter of law, the county has a 12-month probationary period. The letter that told Ms. Zhang when her start date was going to happen said that she started on October 5th. She testified in her deposition that she started on October 5th. She wrote afterward, when she filed a complaint with the EEO, that her official start date was October 5th. Everybody understood that her start date was October 5th until she got terminated and she decided that in order to file a lawsuit and that in order to claim that she wasn't, in fact, a probationary employee, she was going to use the fact that the countywide payroll period, which happens to start on October 3rd, means that she started two days before, when that's not the case. Her letter says that she starts on October 5th. You know, it sounds as though the county HR people need to rearrange their life a little bit. Every lawyer knows that if you're trying to file a document on the last day, at the end of the day, you're risking — they might have wanted to start it a couple of days earlier, they might have wanted to give her a performance report after 11 months. I mean — Your Honor, I understand what you're saying. I truly do. I practice employment law and I know what employers go through, and sometimes that's just not possible. We're all human. Sometimes we wait for the last minute. Well, it's not that it was impossible, it's just they didn't do it. I'm not saying it's impossible. And also what you're saying is sort of contrary to, for example, the federal system where you get the paperwork, start dates on it, it doesn't matter what a letter said. You know, that's what HR considers the start date. And so you're saying it has to be this, well, there's another universe out here where that doesn't work. So it's all county policy. We understand. Everybody had different expectations, apparently, about what this was, but it's hard to — for us, I think — we're just trying to search as how do we get through this as a matter of law. Yeah, and I guess — Because if it's not a matter of law, then it's got to go back for a trial. Yeah. And I guess I would say that if you're running a county, if you're a supervisor in a county and you wanted to determine when the 12-month period, probationary period, ends, you're going to look to the offer letter, and that offer letter, the appointment date, is going to say that the person starts on a particular day, and that's how you're going to calculate it. You're not going to look at what the payroll record says. You're not going to look at whether or not she surfed the Internet a couple of days before that. You're going to look at that offer letter, and that makes sense. You've got to have something to go to so that people can be consistent about what the last day is. If that consistency doesn't exist, it would be very, very difficult to manage a county. So how do you explain the word tentative? I mean, I accept your argument. You said that your start date is X, but it says tentative. What was tentative about it? I'm not sure, Your Honor. I suppose a lot of times when employers tell employees they're going to start, we would say you're tentatively going to start on a particular day. It means you're going to start on a certain day. I'm not sure. I would say that it's probably a word that is superfluous. It doesn't mean that she didn't start on October 5th. It doesn't say you're actually going to start on October 3rd, or you're tentatively going to start on October 3rd, or you will start on October 3rd. It says you're tentatively going to start on October 5th. It communicated to her that the day she was going to start work was Monday, October 5th. And in fact, that was a communication that she fully understood to be her first day. That's why she never asked for compensation for the prior days that she worked. That's why when she was terminated, she wrote in her initial complaint that her official first day was October 5th. Everybody understood until this lawsuit was filed. Everybody understood that October 5th, 2015, was her start date, and that's important because it is important for an employer and for a municipal or a government entity to have some consistency with respect to the dates that a probationary time starts. Okay. I believe you have your argument in hand. Anything else in conclusion? I would also just briefly say that I think the record is also undisputed that Ms. Zhang was terminated for a nondiscriminatory and legitimate business reason with respect to the emails and the disrespectful emails that she sent, and I think that's undisputed as well. That's all, Your Honor. Thank you, Counselor. Thank you. Just a couple of real quick things. The issue always was, in Ms. Zhang's mind, that she was assigned by her manager to work prior to October 5th, and he gave her books and records of the county. She wasn't glancing around the Internet. He gave her books and records of the county to work on, to learn the, you know, the way that the financial system worked, the actual work that, as an accountant, she was doing, and she did it before October 5th. She did it at the request of her manager. Second of all, and this is an important point, I think, there is one wrinkle that you haven't brought up yet, and that is that the county regulations and, indeed, the practice, and this is in the declarations of, I believe, both Gerard and Miller, if I'm not mistaken, is that, and probably Mr. Giboney as well, that the county rules do say an employee's appointment, employment, begins on the first date that they're on the payroll, the day the payroll begins, and that if management in any department wishes to change that in any way, they have to get prior written approval from the auditor controller's office to do that. So, in other words, if they wanted her pay to start on the 3rd, but she doesn't start work until the 5th, they would have had to go to the auditor controller's office to get to it. As far as this complaint, this EEO complaint, saying her start date was the 5th, if you look at the EEO complaint, it is based on exactly what I've argued here today, that her manager told her to start earlier than that, that she was well past one year of actual employment and one year of actual work as assigned by her manager, and that's in that same EEO complaint. The fact that she, on one of the lines of the form, put down the date that the county was at that juncture saying was her start date is just that she was filling out the form. It's not a position that she took. She took the position that she'd started well before that, and she did that in the body of that EEO complaint. There's nothing afteracquired or afterinvented about this case. Thank you, counsel. Thank you. The case just argued to be submitted for decision. Thank you both for your arguments, and we will be in recess with the students. We will have a conference first, and then at least a couple of us will come back and chat with you. We'll be in recess.
judges: Thomas, W. Fletcher, Miller